BILLY V. CAIN, Petitioner v. NORTH CAROLINA DEPARTMENT OF
TRANSPORTATION, Respondent

No. COA01-233

(Filed 19 March 2002)

**Highways and Streets— outdoor advertising permit—billboard—illegal cutting and destruction of vegetation**

A de novo review reveals that the trial court did not err by upholding the revocation of petitioner's outdoor advertising permit for a billboard even though petitioner alleged there was an insufficient connection existing between petitioner and the perpetrator of the illegal cutting and destruction of the vegetation surrounding the outdoor advertising structure, because: (1) N.C. Admin. Code tit. 19, r. 2E.0210(8) provides for revocation of a permit for unlawful destruction of trees or shrubs or other growth located on the right of way in order to increase or enhance the visibility of an outdoor advertising structure; (2) direct involvement by the permit holder in the alleged violation is not necessary to uphold a revocation; and (3) petitioner had a responsibility to abide by NC DOT's requirements and his responsibility did not end when petitioner leased billboard space to a third party, nor did it end when a sublessee violated those requirements.

Judge Tyson concurring in the result.

Appeal by petitioner from judgment entered 29 December 2000 by Judge Henry V. Barnette, Jr. in Wake County Superior Court. Heard in the Court of Appeals 5 December 2001.

*Hutchens & Senter, by H. Terry Hutchens and Rudolph G. Singleton, Jr., for petitioner-appellant.*

*Attorney General Roy A. Cooper, by Assistant Attorney General Gaines M. Weaver, for respondent-appellee.*

TIMMONS-GOODSON, Judge.

Billy Cain ("petitioner") appeals the 29 December 2000 order of the trial court affirming the revocation of his outdoor advertising permit issued by the North Carolina Department of Transportation ("NCDOT").

The relevant facts are as follows: Petitioner was the owner of an outdoor advertising structure located on Interstate 95 in Cumberland County. Petitioner leased the billboard to Sunshine Outdoor of Florida, Inc. ("Sunshine Outdoor") under the terms of a written agreement by which Sunshine Outdoor was granted the use of the billboard for a term of ten years. Sunshine Outdoor subleased the billboard to Café Risque, a business operated adjacent to Interstate 95 in Harnett County.

On 7 February 1998, NCDOT Maintenance Manager, Hugh S. Matthews, responded to a report of an apparent destruction of trees, shrubs, and other vegetation located on the right-of-way of Interstate 95. The apparent removal of the vegetation was in order to increase or enhance visibility of the outdoor advertising structure. On 10 February 1998, the Department District Engineer revoked petitioner's permit.

Petitioner contended that neither he nor any of his employees was directly or indirectly engaged in the illegal cutting reported on 7 February 1998. Petitioner also alleged that neither Sunshine Outdoor nor Café Risque sought permission to remove vegetation from the permit site, nor did they inform petitioner of their intention to remove vegetation. On 28 May 1998, the Secretary of NCDOT received a letter from Jean Claude Brunnell of Sunshine Outdoor asserting that Café Risque was responsible for the illegal cutting and that neither Sunshine Outdoor nor petitioner were aware of the destruction of the vegetation.

On 9 September 1999, pursuant to an appeal by petitioner, the Secretary of NCDOT entered a final decision upholding and affirming the revocation of petitioner's permit. Petitioner petitioned for judicial review of the final agency decision. The trial court in affirming the revocation of petitioner's permit made the following pertinent findings of fact:

7. The billboard at the permit site was leased to Sunshine Outdoor, Inc. by Billy V. Cain under the terms of a written agreement, by the terms of which, Sunshine Outdoor of Florida, Inc.

was granted the rights to the use of the billboard for a term of ten (10) years and included options to renew, in consideration of payments to Billy V. Cain in the approximate amount over the initial term of the lease in the approximate amount of One-Hundred Fifty Thousand Nine Hundred Thirty-Five Dollars ($150,935.00). Neither Billy V. Cain, nor any employee of Billy V. Cain was engaged directly or indirectly in the illegal cutting at the permit site on February 7, 1998, or at any other time.

8. Neither Billy V. Cain nor any employee of Billy V. Cain authorized, controlled, directed or otherwise participated in the illegal cutting of the vegetation at the permit site on February 7, 1998.

9. Neither Sunshine Outdoor, Inc. nor Café Risque nor anyone on behalf of either entity, sought Billy V. Cain's permission to remove any vegetation from the permit site nor did they inform Billy V. Cain of their intention or plan to remove the vegetation.

10. Billy V. Cain had no knowledge whatsoever that any person or entity intended to remove vegetation at the permit site or, in fact, had removed any vegetation at the permit site.

. . . .

15. Illegal cutting of vegetation at the permit site was carried out by agents of either Sunshine Outdoor of Florida, Inc. or Café Risque.

Based on the above findings of fact, the trial court made the following conclusions of law:

1. The Final Decision of the Secretary of Transportation is not in violation of any constitutional provisions.

2. The Final Decision of the Secretary of Transportation was made with the Outdoor Advertising Control Act, N.C. Gen. Stat. 136-126, et. seq. and rules and regulations promulgated by the Department of Transportation.

3. The Final Decision of the Secretary of Transportation is not effected [sic] by any other error of law.

4. Pursuant to *National Advertising Co. Bradshaw*, 60 N.C. App. 745, 299 S.E.2d 817 (1983), the Department must clearly show the following in order to revoke a permit for the unlawful destruction of trees or shrubs or other growth located on the right of way (1) the identity of the persons, (2) who committed a violation for

which revocation is permissible and (3) show a sufficient connection between those persons and the permit holder.

5. The contract between the Petitioner Billy V. Cain and Sunshine Outdoor of Florida, Inc. for the lease of the billboard is a sufficient connection to satisf[y] the third element established by the *National Advertising Co.* court.

Petitioner appeals.

---

On appeal, petitioner contends that the trial court erred in affirming the decision of the Secretary of Transportation in revoking petitioner's outdoor advertising permit. Specifically, petitioner argues that an insufficient connection existed between petitioner and the perpetrator of the illegal cutting and therefore, petitioner bears no responsibility for the apparent destruction of the vegetation. Thus, petitioner asserts that the revocation of his outdoor advertising permit was not justified. We disagree.

The Outdoor Advertising Control Act ("OACA")is codified in N.C. Gen. Stat. § 136-126 (1999). The purpose of the Act is to "promote the safety, health, welfare and convenience and enjoyment of travel on and protection of the public investment in highways within the State, . . . and to promote the reasonable, orderly, and effective display of such signs, displays and devices." N.C. Gen. Stat. § 136-127 (1999). N.C. Gen. Stat. § 136-130 provides NCDOT with the authority to promulgate rules and regulations concerning:

(1) outdoor advertising signs along the right-of-way of interstate or primary highways in this State; (2) 'the specific requirements and procedures for obtaining a permit for outdoor advertising as required in [N.C. Gen. Stat.] § 136-133'; and (3) 'for the administrative procedures for appealing a decision at the agency level to refuse to grant or in revoking a permit previously issued.'

*Advertising Co. v. Bradshaw, Sec. of Transportation,* 48 N.C. App. 10, 16-17, 268 S.E.2d 816, 820 (quoting N.C. Gen. Stat. 136-130), *disc. review denied,* 301 N.C. 400, 273 S.E.2d 446 (1980).

N.C. Gen. Stat. § 136-133(a) (1999) provides that except as allowed by statute, "no person shall erect or maintain any outdoor advertising within 660 feet of the nearest edge of the right-of-way of the interstate or primary highway system" without first obtaining a permit from NCDOT. The statute further provides that such "permit

shall be valid until revoked for nonconformance with this Article or rules adopted by the Department of Transportation." In accordance with N.C. Gen. Stat. § 136-130, NCDOT has promulgated N.C. Admin. Code tit. 19, r. 2E.0210(8) (2000) which provides for revocation of a permit for "unlawful destruction of trees or shrubs or other growth located on the right of way in order to increase or enhance the visibility of an outdoor advertising structure[.]"

When a permit issued for an outdoor advertising structure has been revoked and all administrative remedies have been exhausted, the party aggrieved is entitled to judicial review of the decision of the Secretary of Transportation. N.C. Gen. Stat. § 136-134.1 (1999). Under N.C. Gen. Stat. § 136-134.1, the party may appeal the order of the Department of Transportation and has a right to a hearing *de novo* in the Superior Court of Wake County. The Superior Court, after hearing the matter, may affirm, reverse or modify the decision if the agency decision is "(1) in violation of constitutional provisions; or (2) not made in accordance with this Article or rules or regulations promulgated by the Department of Transportation; or (3) affected by other error of law." *Id.*

The task of this Court in reviewing a trial court's order of an agency decision is two-fold: (1) determine whether the trial court exercised the appropriate standard of review and (2) determine whether the trial court properly applied this standard. *Whiteco Outdoor Adver. v. Johnston County Bd. of Adjust.*, 132 N.C. App. 465, 468, 513 S.E.2d 70, 73 (1999). The standard of review depends on the nature of the issues presented on appeal. *Walker v. N.C. Dept. of Human Resources*, 100 N.C. App. 498, 502, 397 S.E.2d 350, 354 (1990), *disc. review denied*, 328 N.C. 98, 402 S.E.2d 430 (1991). Allegations that a decision is based upon an error of law dictate *de novo* review. *Id. De novo* review "requires a court to consider the question anew[,]" as if the agency has not addressed it. *Eury v. N.C. Employment Security, Comm.*, 115 N.C. App. 590, 597, 446 S.E.2d 383, 387, *disc. review denied*, 338 N.C. 309, 451 S.E.2d 635 (1994). Incorrect statutory interpretation by an agency constitutes an error of law. *Brooks, Comm'r. of Labor v. Rebarco, Inc.*, 91 N.C. App. 459, 464, 372 S.E.2d 342, 345 (1988).

In the instant case, petitioner contends that the court's order affirming the final decision of the Secretary of Transportation revoking petitioner's outdoor advertising permit was contrary to law. Accordingly, we review the Secretary's decision *de novo*.

In determining whether there has been a violation of an outdoor advertising regulation sufficient to support a permit revocation, our Court has held NCDOT must "(1) clearly identify persons, (2) who committed a violation for which revocation is permissible, and (3) show a sufficient connection between those persons and the permit holder." *Whiteco Industries, Inc. v. Harrelson*, 111 N.C. App. 815, 434 S.E.2d 229 (1993), *disc. review denied*, 335 N.C. 566, 441 S.E.2d 135 (1994).

Since *National*, it has been established that direct involvement by the permit holder in the alleged violation is not necessary to uphold a revocation. In *Whiteco Metrocom, Inc. v. Roberson*, 84 N.C. App. 305, 306, 352 S.E.2d 277, 277 (1987), petitioner, owner of an outdoor advertising structure, hired an independent contractor to maintain its signs. Petitioner's permit was revoked because of the violations committed by independent sign maintenance subcontractors. *Id.* at 306, 352 S.E.2d at 277. Petitioner contended his permit could not be revoked since "the delinquencies were those of an independent contractor." *Id.* at 307, 352 S.E.2d at 278. This Court held that "by obtaining the statutorily authorized permit, petitioner accepted the duty to follow the law in its exercise; and petitioner did not rid itself of this duty by hiring an independent substitute to act for it; for a duty imposed by statute cannot be delegated." *Id.* at 307, 352 S.E.2d at 278.

Similarly, in *Whiteco Industries*, 111 N.C. App. 815, 434 S.E.2d 229, Whiteco leased a billboard to Comfort Inn. Subsequently, three men were observed cutting trees on the right-of-way. *Id.* at 816, 434 S.E.2d at 231. The men admitted that they were hired by the owner of Comfort Inn. The permit holder, Whiteco, argued that because the lessee of the billboard had hired the violators, there was not a sufficient connection to warrant permit revocation. *Id.* at 820, 434 S.E.2d at 233. This Court held that "this argument would be tantamount to inviting circumvention of the law, and we reject it. Petitioner's responsibility to abide by DOT's requirements to obtain and retain outdoor advertising permits *did not end when it leased billboard space to a third party*, and is not excused when an agent of the third party violates those requirements." *Id.* at 821, 434 S.E.2d at 233 (emphasis added).

Our *de novo* review in the instant case leads us to conclude that the trial court's decision was not affected by errors of law. The fact that petitioner did not know of the alleged violation nor hired the vio-

lators, did not relieve him of liability. The fact remains that there existed a contractual relationship between petitioner and Sunshine Outdoor. As in *Whiteco*, petitioner had a responsibility to abide by NCDOT requirements and his responsibility did not end when petitioner leased billboard space to a *third* party, nor did it end when a *sublessee* violated those requirements. Based on prior rulings of this Court, we hold that the trial court properly affirmed the revocation of petitioner's outdoor advertising permit.

Petitioner presents two new arguments on appeal: (1) recent changes to the administrative code provisions related to outdoor advertising show that the permit at issue was unfairly revoked; and (2) NCDOT has ample means to protect against illegal cutting on the right-of-way through enforcement of N.C. Gen. Stat. § 14-128. However, these arguments were not presented at trial, nor does the record reflect that petitioner has assigned them as error. Arguments not made before the trial court are not properly before this Court. *See* N.C.R. App. P. 10 (b)(1) (2000). Accordingly, we do not address petitioner's remaining assignments of error.

Based on the foregoing, we affirm the trial court's order upholding the revocation of petitioner's outdoor advertising permit.

Affirmed.

Judge Hudson concurs.

Judge Tyson concurs in the result with a separate opinion.

TYSON, Judge concurring in the result.

I concur in the result of the majority. There was substantial evidence of a "sufficient connection" between the permit holder and his lessee, the person who cut the vegetation, to uphold the revocation of the permit. I disagree with the majority that it is irrelevant whether Sunshine Outdoor or Café Risque hired the violators.

At the hearing below, the Secretary of Transportation found that Richard Marshburn ("Marshburn"), agent for Sunshine Outdoor, authorized and hired Danny Moore ("Moore"), the party who cut the vegetation without a permit. This finding of fact is supported by: (1) a memo from R.R. Stone, the District Engineer, which states that Marshburn informed him that Sunshine Outdoor was responsible for the cutting; and (2) a letter from Hugh Matthews, the County

Maintenance Engineer, which states that upon reporting to the site of the cutting, Moore informed him that Marshburn had hired him and that Moore went to the motel and brought Marshburn back to the site with him. These facts establish a "sufficient connection" between the person who violated 19A N.C. Admin. Code r. 2E.0210(8) and the permit holder. *See Whiteco Indus., Inc. v. Harrelson*, 111 N.C. App. 815, 819, 434 S.E.2d 229, 232-33 (1993) (violators hired by lessee of the permit holder was a sufficient connection to warrant revocation of the holder's permit) (*"Whiteco I"*).

However, the majority implies that petitioner's responsibility to abide by NCDOT requirements does not end when the violators are the sublessee or are hired by the sublessee. A "sufficient connection" between the permit holder and the violator, as required in *National Adver. Co. v. Bradshaw*, 60 N.C. App. 745, 749, 299 S.E.2d 817, 819 (1983), does not extend to third party strangers to the permit holder, such as a sublessee. To hold otherwise would leave the permit holder without recourse against an unknown third party whose actions caused the permit holder to lose not only his permit, but his structural improvements on the property as well. *See* 19A N.C. Admin. Code r. 2E.0212(b) (2000) (when the outdoor advertising structure is unlawful and a nuisance, it must be made to conform, if permitted by the rules, or removed); 19A N.C. Admin. Code r. 2E.0212(c) (2000) (an outdoor advertising structure cannot be made to conform when the permit is revoked under 19A NCAC 2E.0210(2),(3),(11), or (12)).

There exists no "privity of contract" between the original land-lord-permit holder and the sublessee or other third party stranger to the agreement between the permit holder and the lessee. The original landlord has no right of direct action against the sublessee with respect to violations of covenants in the original lease. *Neal v. Craig Brown, Inc.*, 86 N.C. App. 157, 162, 356 S.E.2d 912, 915 (1987) (citing Patrick K. Hetrick & James B. McLaughlin, Jr., *Webster's Real Estate Law in North Carolina*, § 241 at 251 (Rev. ed. 1981)). A contractual relationship exists between the original lessor-permit holder and sublessee only if a sublease constitutes an actual assignment. *Northside Station Assocs. Partnership v. Maddry*, 105 N.C. App. 384, 388, 413 S.E.2d 319, 321 (1992) (citation omitted). "[A] conveyance is an assignment if the tenant conveys his 'entire interest in the premises, without retaining any reversionary interest in the [lease] term itself.' " *Id.* If the conveyance is an assignment, "privity of estate" is created between the original lessor and the sublessee

with regard to lease covenants that run with the land, and the original lessor will have a right of action directly against the sublessee. *Id.* Absent an assignment, "privity of estate" is not established and the original landlord-permit holder has no direct action and thus no recourse against the sublessee. There is no evidence in the record that shows petitioner's lease with Sunshine Outdoor was assigned to Café Risque.

This interpretation has been adopted and incorporated in recent amendments to 19A N.C. Admin. Code r. 2E.0210 which provides for revocation of the permit for:

(11) destruction or cutting of trees, shrubs, or other vegetation located on the state-owned or maintained right of way where an investigation by the Department of Transportation reveals that the destruction or cutting:

(c) was conducted by one or more of the following: the sign owner, the permit holder, the lessee or advertiser employing the sign, the owner of the property upon which the sign is located, or any of their employees, agents *or assigns*, including, but not limited to, independent contractors hired by the permit holder/sign owner, the lessee/agents or advertiser employing the sign, or the owner of the property upon which the sign is located.

19A N.C. Admin. Code r. 2E.0210(11)(c) (2000) (emphasis supplied).

*National, Whiteco I,* and the amendment to the rules adopted by the Department of Transportation do not extend "sufficient connection" to those third parties with which the permit holder does not have such a legal relationship to allow him recourse for the revocation of his permit and the loss of his improvements. Given the finding of fact by the Secretary of Transportation, that Sunshine Outdoor, petitioner's lessee, was present and ordered the illegal cutting of the vegetation, I concur that a "sufficient connection" between the permit holder and his lessee was established to uphold the revocation of petitioner's permit. *See Whiteco I,* 111 N.C. App. at 819, 434 S.E.2d at 232-33.